DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment in favor of appellees based on appellants' claims of negligence and legal malpractice. For the reasons that follow, this court reverses the judgment of the trial court.
This appeal arises out of an action brought by the Estate of Dorathy A. Holmes, by and through Linde Hurst Webb, Administrator, WWA ("the Holmes estate"), St. Paul's Lutheran Church ("St. Paul's") and American States Insurance Company ("American States") against John G. Ludeman, Michael D. Errington, Gordon D. Huffman and Joseph L. Czerniakowski, as well as against Czerniakowski, Errington, Huffman and Ludeman as an entity.
The Holmes estate and St. Paul's set forth the following assignments of error:
 "I. The trial court erred in granting summary judgment in favor of the law firm Czerniakowski, Errington, Huffman and Ludeman because the Appellants presented ample evidence establishing that Czerniakowski, Errington, Huffman and Ludeman was a legal entity responsible for the wrongful acts of Ludeman.
 "II. The trial court erred in granting summary judgment in favor of Appellees Joseph Czerniakowski, Michael Errington and Gordon Huffman because the Appellants presented sufficient evidence establishing genuine issues of material facts to said Appellees being in partnership with John Ludeman and being responsible for his wrongful acts."
Appellant American States Insurance Company sets forth the following assignments of error:
 "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CZERNIAKOWSKI, ERRINGTON AND HUFFMAN ON THE ISSUE OF THE EXISTENCE OF A PARTNERSHIP.
 "II. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AGAINST THE FIRM, AND IN GRANTING SUMMARY JUDGMENT IN THE FIRM'S FAVOR."
The events leading to the filing of the complaint in 1999 are as follows. Michael Errington became licensed to practice law in Ohio in 1970. Approximately two years later, he contacted Joseph Czerniakowski, also a licensed attorney, and the two men began sharing office space on Glanzman Road in Toledo. In the early 1980's, John Ludeman, newly licensed to practice law in Ohio, began sharing office space with Czerniakowski and Errington. In 1985 or 1986, Errington bought an office building on South Detroit Avenue in Toledo and he and Ludeman moved to that location. Czerniakowski continued to work out of the Glanzman Road office. In 1994, attorney Gordon Huffman began practicing law out of the South Detroit Avenue office.
In the early 1990's, Ludeman began to handle probate work for Dorathy Holmes and her husband James and subsequently handled matters in connection with the administration of James Holmes' estate when James died in 1992. When Dorathy Holmes died in 1995, Ludeman was appointed executor of her estate pursuant to a codicil to her will. In 1998, however, the probate court removed Ludeman as executor of the Holmes estate for failing to file a final account, and shortly thereafter the court appointed Linde Hurst Webb as successor administrator WWA of the estate. Ludeman later admitted to theft and misappropriation of funds in connection with his handling of Dorathy Holmes' estate and ultimately was charged, convicted and sentenced to a term of imprisonment. In 1999, Ludeman resigned from the practice of law in Ohio.
In a complaint filed on June 9, 1999, the Holmes estate alleged that Ludeman, while a licensed attorney in Ohio, provided legal services to Dorathy Holmes before her death and represented her estate after she died. The complaint alleged that at the time of his representation of Holmes and her estate, Ludeman was a member of a law firm known as Czerniakowski, Errington, Huffman and Ludeman and was in partnership with Joseph L. Czerniakowski, Michael D. Errington and Gordon D. Huffman. The complaint further alleged that Ludeman failed to account for all of the assets of the Holmes estate and used estate assets to pay his personal expenses; that Ludeman sold securities and other assets which resulted in the payment of unnecessary taxes, which taxes could have been avoided if Ludeman had transferred the securities and assets directly to the beneficiaries of the estate; that Ludeman failed to recommend the use of a charitable remainder trust and other estate planning devices which could have saved the estate money; and that the defendants breached their contract of representation.
On June 15, 1999, an amended complaint was filed, joining St. Paul's Lutheran Church, contingent beneficiary of the Holmes estate, as a party plaintiff and adding a claim that the defendants had failed to file estate tax returns in a timely manner. Ludeman failed to answer the amended complaint and on January 11, 2000, the Holmes estate and St. Paul's moved for default judgment. On January 19, 2000, the trial court granted the motion and ordered a default judgment entered against Ludeman.
On February 24, 2000, American States Insurance Company ("American States") filed a motion to join this action as a party plaintiff. American States asserted that on January 5, 1996, a fiduciary bond in the amount of $800,000 was filed in the Lucas County Probate Court in connection with the appointment of Ludeman as the executor of the estate of Dorathy Holmes. American States alleged that following an "account shortage" proceeding in the probate court to determine the nature and extent of Ludeman's actions it had paid the estate $115,416.77, which represented the amount of unaccounted-for assets for which there was no dispute that coverage existed under the bond. American States therefore claimed to be equitably subrogated to the claims asserted against the defendants in this lawsuit. On April 28, 2000, the trial court granted American States' motion to join.
On May 26, 2000, the trial court held an assessment of damages hearing in connection with Ludeman's default and on that date granted judgment against Ludeman for negligence and legal malpractice in the amount of $1,278,251.80.
On August 4, 2000, defendants Czerniakowski, Errington and Huffman filed a motion for summary judgment. In support of their motion, they argued that at no time did a partnership exist between any of the defendants and that they operated as sole practitioners sharing expenses.
On August 30, 2000, the Holmes estate and St. Paul's filed a memorandum in opposition to summary judgment as well as a cross-motion for summary judgment. Holmes and St. Paul's argued that the arrangement between the attorneys was a partnership or, at a minimum, that the attorneys held themselves out to third parties as a partnership. In the alternative, the Holmes estate and St. Paul's asserted that the attorneys were functioning as an unincorporated association and that liability therefore attached pursuant to R.C. 1745.01.
Also on August 30, 2000, American States filed a memorandum in opposition to defendants' motion for summary judgment, essentially reiterating the arguments set forth by the Holmes estate and St. Paul's.
St. Paul's and the Holmes estate submitted to the trial court the deposition of William Hummer, an independent insurance agent and president of Celaris Insurance Services. Hummer testified that he handled the professional liability insurance account for attorneys Czerniakowski, Errington, Huffman and Ludeman for several years. Hummer referred to a renewal application page in his file for the attorneys that was signed by Michael Errington over the line "Michael Errington, Partner." Hummer also stated that it was not his understanding that the group of attorneys was a partnership and that he believed it to be four individual practitioners sharing office overhead. Hummer further testified that coverage was issued through one policy with four individuals sharing the policy limit and that payments were received from the four individuals and applied to the single account with each attorney writing a separate check for one-fourth of the premium. Hummer stated that Errington was his principal contact on the account over the years and that he believed Errington to be authorized to respond to questions with respect to the policy on behalf of all four attorneys. Hummer clarified that he saw Errington as the "point person" but did not know whether or not Errington ever had to clear certain issues with the others. Hummer stated that it is standard procedure to sell a single policy to a group of associated lawyers who are sole practitioners. Hummer also discussed a letter from Errington regarding insurance coverage in which Errington stated, "I have discussed the matter with my partners * * *."
Appellants also presented the deposition testimony of John Ludeman. Ludeman testified that he set up practice in Errington's Glanzman Road office in 1981 and worked there with Errington and Czerniakowski until he and Errington moved to the South Detroit Avenue location. Ludeman stated that he rented space at the South Detroit Avenue office from Errington, who initially was his mentor. He stated that the attorneys shared expenses, did not share clients and kept their own client files separate. This relationship did not change over the years, he stated.
Ludeman identified phone book listings in the yellow pages and white pages for "Errington and Ludeman" and said that, in his mind, they were advertising only that the two attorneys were located in the same office. He further identified letterhead with "Czerniakowski, Errington and Ludeman" at the top and said the group was not a partnership. Ludeman testified that there never was a written agreement that set forth the relationship between the three attorneys or the arrangements as to sharing expenses. He stated that they shared expenses for rent, utilities, library materials, office equipment and office staff. Some of the bills were paid out of an account with Key Bank into which he made a monthly deposit and on which he and Errington could write checks. Checks he received from clients were never deposited into the Key Bank account. Ludeman explained that he and Errington each paid one of the secretaries for one-half of her time and each gave her a separate W-2 form; Ludeman paid the other secretary in full and Errington reimbursed him.
Ludeman stated that he and Errington covered for each other when one went on vacation, usually without monetary compensation and by oral agreement. Ludeman testified that he never referred to Errington as his "partner" when talking to a client and said he viewed Errington as having a separate law practice from his own. Ludeman identified a lease agreement for the office copy machine which he had signed with the title "associate." He further testified that "association of individual practitioners" would accurately describe the relationship he had with Errington, Czerniakowski and Huffman. He stated that on several occasions he terminated his professional relationship with a client when he discovered that the opposing party was represented by Errington, and said Errington did the same several times. He further testified that he never told the office staff not to share information with each other.
Ludeman identified the declarations pages for several professional liability insurance policies which listed the named insured as "Czerniakowski, Errington, Huffman and Ludeman." He also identified the insurance application he had signed as "partner," but said he only wrote "partner" because he had to indicate a title by his name. He stated that he has always been a sole practitioner. Ludeman testified that he filed his income taxes with a sole proprietor schedule and never received a partnership distribution tax report for the law practice.
Ludeman further testified that he began struggling with alcohol abuse in 1989 or 1990 and that the problem increased tremendously in the mid-1990's. He stated that he began stealing from the Holmes estate in 1996, about one year after he first took funds from another estate he was handling. He stole funds from the estate for his personal use and then had to sell all of the Holmes stock to pay the estate's income taxes. Ludeman testified that Czerniakowski, Errington and Huffman did not know of the misappropriation of funds prior to Ludeman's leaving the group in 1998, and he denied the existence of a partnership with the other three attorneys.
Plaintiffs also presented the deposition testimony of Michael Errington, who testified as to the professional relationship between the four attorneys. Errington stated that he had been associated with Joseph Czerniakowski since approximately 1971, when he moved his practice into a small office which Czerniakowski rented on Glanzman Road. Czerniakowski worked in adjacent office space which he also rented and, over the next several years, various other attorneys rented office space in that location. Errington explained that he did not pay Czerniakowski rent initially when his law practice was just getting started but that after a while he began paying Czerniakowski for some of the office overhead. Errington recalled that Ludeman began sharing space there in approximately 1984 but was not aware of the nature of the arrangement between Ludeman and Czerniakowski.
Errington testified that in approximately 1985 he outgrew the space on Glanzman Road and purchased an office building on South Detroit Avenue. He stated that when he moved his office, Czerniakowski stayed behind and Ludeman moved with him. Errington further stated that after the move the nature of the association between the three attorneys did not change, other than the discontinuation of shared overhead for the Glanzman Road office.
Errington testified that his business cards had only his name on them and that they had never had any of the other attorneys' names on them. Errington identified letterhead he had used in 1999, which read, under the names of the attorneys, "an association of individual practitioners," and said the term accurately depicted the relationship between himself, Czerniakowski and Huffman. He also identified letterhead which had been used in 1997 that had Ludeman's name at the top as well, but which did not contain the phrase "an association of individual practitioners." Errington stated that the four attorneys were associated at the South Detroit Avenue address for the purpose of sharing expenses. He stated that in 1997, Czerniakowski, Errington, Huffman and Ludeman was an association of individual practitioners for the practice of law. Errington further testified that, in order to avoid the appearance of impropriety, he would decline to represent a client if one of the other attorneys in his office already represented the adverse party.
Errington denied that the association was a partnership and said there was no written agreement that detailed the relationship between the attorneys. He stated that he and Ludeman each contributed to the common overhead for the South Detroit Avenue office by means of making regular deposits into the account at Key Bank. Errington's testimony essentially confirmed that of Ludeman's as to what expenses the joint account covered.
Errington testified that each attorney collected his own fees and those fees were not commingled with any other funds. He further stated that the billing statements directed that payment be made to the attorney who had provided the services. The attorneys would compensate each other for work they would do for one another to cover for vacations or extended absences from the office but there was no written agreement to cover such situations.
Errington stated that he did not know why Ludeman wrote "partner" by his name on the malpractice insurance application he submitted for the group in 1995 and said he disagreed with the designation. Errington acknowledged having signed a subsequent insurance document over the designation "Michael D. Errington, partner," but said the form provided only three choices for a title — partner, officer and owner — and that he felt that partner was the closest to being accurate.
Errington testified that he was not aware of Ludeman's misuse of funds until October 1998, when he learned from probate court personnel that there was a substantial shortage in the Holmes account. Prior to that time, Errington had not noticed any behavior on Ludeman's part that would cause him to suspect any problems.
On September 13, 2000, the trial court granted summary judgment in favor of appellees and denied appellants' motions for summary judgment. The trial court determined as a matter of law that attorneys Czerniakowski, Errington, Huffman and Ludeman had not been operating as a partnership. The trial court based its decision on the following factual findings: there was no written or oral partnership agreement between the four attorneys; there was no indication that the attorneys paid taxes as a partnership; fee splitting occurred infrequently and without any pre-existing agreement; co-ownership of office furniture and labor does not establish the existence of a partnership; although Ludeman signed an insurance document as a "partner," that was of no consequence; and the parties acquired an insurance policy wherein they identified their status as a sole proprietorship. The trial court further found that the attorneys had not been practicing as an unincorporated association. It is from that judgment that appellants filed a timely appeal.
Appellants Holmes estate and St. Paul's assert on appeal that the trial court had before it overwhelming evidence that the four attorneys had formed both an association of lawyers and a partnership. Specifically, appellants first argue that they presented evidence that the group of attorneys had formed an unincorporated association and as such were responsible for Ludeman's wrongful acts. Appellants assert that, while the trial court properly found that the group of attorneys was an unincorporated association pursuant to R.C. 1745.01 and that appellants were entitled pursuant to the statute to file suit against the entity, the trial court erred by failing to allow the case to proceed to trial. Appellants cite such evidence as Errington's testimony at deposition that the attorneys were "an association of individual practitioners for the practice of law," the firm stationery, the office checking account, phone book listings and the copy machine lease agreement signed by John Ludeman as an "associate."
The Holmes estate and St. Paul's further assert that the volume of evidence that the four attorneys conducted their law practice as partners is equally overwhelming and that, at a minimum, there is a question of fact as to whether they were operating a partnership by estoppel or a partnership in fact.
Appellees assert that they owned separate and distinct law practices and did not share in profits and losses, and that reasonable minds therefore could only conclude that the relationship between the four attorneys does not meet the criteria to establish a partnership under R.C. 1775.05(A) and R.C. 1775.06. Appellees also assert that there is no basis in law for a conclusion that attorneys sharing expenses constitute an unincorporated association.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
R.C. 1775.05(A) defines a partnership in fact as "an association of two or more persons to carry on as co-owners a business for profit." There is, however, no bright-line rule to help determine the existence of a partnership in fact, although R.C. 1775.05(C) and (D) provide the courts with some guidelines. Specifically, R.C. 1775.05(C) states that "the sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." Subsection (D) states, in relevant part, that "[t]he receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business * * *."
As to partnership by estoppel, R.C. 1775.15 provides as follows:
 "(A)Subject to section 1339.65 of the Revised Code, when a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."
The Ohio Revised Code does not define an unincorporated association, although R.C. 1745.01 states that "[a]ny unincorporated association may contract or sue in behalf of those who are members, and in its own behalf, be sued as an entity under the name by which it is commonly known and called."
This case presented to the trial court several questions: Were Czerniakowski, Errington, Huffman and Ludeman operating as a partnership? Or, more specifically, were they functioning as either a partnership by estoppel or a partnership in fact? Or, did the group of attorneys constitute an unincorporated association? The parties offered a significant amount of relevant evidence to support their respective positions.
In support of their claim that the four attorneys operated as a partnership, appellants presented evidence of the following: all four attorneys, as well as the support staff, had access to all client files in the office; the attorneys would decline to represent any individual with an interest adverse to that of an established client; new clients were "equitably divided" among the four attorneys by the office staff; the attorneys would cover for one another if the primary attorney on a case were unavailable; fee-sharing occurred if more than one attorney worked on a case; there was a "firm account" at Key Bank for office expenses; much of the office furnishings and supplies were commonly owned and the attorneys each had authority to bind the others contractually with respect to the purchase of such items; the resources of the support staff were shared; the attorneys applied jointly for professional malpractice insurance and the policy had "Czerniakowski, Errington, Huffman and Ludeman" as the named insured; the attorneys had the authority to act on behalf of and contractually bind the others with respect to their applications for malpractice insurance; the letterhead, fax cover sheets and paper used for billing statements were imprinted with "Czerniakowski, Errington, Huffman and Ludeman;" when support staff answered the phone in the office, they stated "Czerniakowski, Errington, Huffman and Ludeman;" ads in the telephone directory at one point listed "Errington and Ludeman" at the South Detroit Avenue address; at least one of the attorneys testified that they were "associated for the practice of law;" the attorneys referred to themselves as partners to clients and other members of the public; and one application for insurance was signed "John G. Ludeman Partner."
Appellees, in support of their position, asserted that there was no evidence of a written partnership agreement, that they did not share in profits and losses, and that they made their own business decisions and handled their own business affairs.
This court has thoroughly examined the evidence before the trial court as summarized above and, upon consideration thereof, we find that there remains a genuine issue of material fact as to whether attorneys Czerniakowski, Errington, Huffman and Ludeman were conducting business as a partnership — that is, whether they were an association to carry on as co-owners a business for profit pursuant to R.C. 1775.05(A), or whether they represented themselves as partners pursuant to R.C.1775.15(A). Accordingly, we find that summary judgment should not have been granted and the first and second assignments of error of appellants Holmes and St. Paul's Lutheran Church, as well as the first and second assignments of error of appellant American States Insurance Company, are well-taken.
On consideration whereof, this court finds that substantial justice was not done the parties complaining and the judgment of the Lucas County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision. Costs of this appeal are assessed to appellees.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J.
James R. Sherck, J., Richard W. Knepper, J., JUDGES CONCUR.